IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAURICE BROWN,

    Plaintiff,                    No. CIV S-05-1086 MCE DAD P

    vs.

M. PENNER et al.,                ORDER AND

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. The matter is before the court on defendant's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a timely opposition to the motion. Defendant has filed a reply.

**BACKGROUND**

        On June 1, 2005, plaintiff filed this action against J. Turella, D.O., and M. Penner, M.D., alleging that they were deliberately indifferent to his medical needs. On December 1, 2003, plaintiff injured his left ring finger while playing football. The next day, plaintiff had an x-ray taken of the injury, which indicated that his finger was fractured. Plaintiff contends that he did not see an orthopedic hand specialist until May 2004, and he did not have the necessary surgery to correct the fracture until August 2004. Plaintiff concludes that defendants' deliberate

indifference to his serious medical needs violated his Eighth Amendment rights.  He seeks compensatory and punitive damages.

   At screening it was determined that plaintiff's complaint appeared to state cognizable claims for relief against defendants Penner and Turella, and in due course, the United States Marshal served plaintiff's complaint on them.  On January 17, 2006, the defendants filed a motion to dismiss plaintiff's complaint pursuant to Rule 8, Rule 12(b)(6), or non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, or for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  Plaintiff filed an opposition, which contained a notice of dismissal of defendant Turella.  On July 11, 2006, the undersigned issued findings and recommendations, recommending that defendants' motion to dismiss be denied.  The court also dismissed defendant Turella from the action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.  On August 9, 2006, the assigned district judge adopted the findings and recommendations.  On August 14, 2006, defendant Penner filed an answer.

   On May 29, 2007, defendant Penner filed the pending motion for summary judgment, arguing that the evidence presented in support of the motion establishes that he was not deliberately indifferent to plaintiff's medical needs.  Plaintiff opposes the motion essentially on the grounds that the evidence he has submitted in opposition establishes that Dr. Penner's medical care of his injury fell below constitutional standards.  Defendant has filed a reply.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

/////

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
2  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
3  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
4  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,
5  after adequate time for discovery and upon motion, against a party who fails to make a showing
6  sufficient to establish the existence of an element essential to that party's case, and on which that
7  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof
8  concerning an essential element of the nonmoving party's case necessarily renders all other facts
9  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as
10 whatever is before the district court demonstrates that the standard for entry of summary
11 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.
12         If the moving party meets its initial responsibility, the burden then shifts to the
13 opposing party to establish that a genuine issue as to any material fact actually does exist.  See
14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
15 establish the existence of this factual dispute, the opposing party may not rely upon the
16 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
17 form of affidavits, and/or admissible discovery material, in support of its contention that the
18 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
19 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
20 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
21 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
22 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
23 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
24 1436 (9th Cir. 1987).
25         In the endeavor to establish the existence of a factual dispute, the opposing party
26 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 10, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

        Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

        Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Eighth Amendment Medical Care Claim

        The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

        Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

5

deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff

must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by citations to plaintiff's complaint and a declaration by defendant Penner.

Defendant's evidence presents the following version of events.  On December 1, 2003, plaintiff injured his left ring finger while playing football and saw Dr. Penner, who observed swelling at the proximal inter-phalangeal (PIP) joint.  Dr Penner ordered x-rays and prescribed Motrin and ice packs.  On December 2, 2003, Dr. Penner saw plaintiff again after he was informed of the results of the x-rays, which showed a fracture of the proximal portion of the middle phalanx of plaintiff's left ring finger with intra-articular extension.  Based on this diagnosis Dr. Penner, a general practitioner, determined that plaintiff would probably need open reduction and internal fixation (surgery and metal pins) to allow for proper healing of the fracture.  Dr. Penner ordered an "orthopedic consult - (urgent) within 1-2 weeks re [fracture left] fourth middle phalanx" and prescribed Vicodin and Motrin to relieve plaintiff's pain.

On December 26, 2003, plaintiff saw Dr. Duc who noted that Dr. Penner had ordered an orthopedic consult on December 2, 2003.  Following the examination on December 2, 2003, Dr. Penner did not examine plaintiff again until February 17, 2004.  By that time, plaintiff's fracture had healed in a way that restricted movement of the PIP joint – a malunion.

1  Dr. Penner ordered additional x-rays to evaluate the healing of the fracture and again requested
2  an orthopedic consult.
3        In May 2004, pursuant to Dr. Penner's second referral, Dr. Robert Allen of U.C.
4  Davis Medical Center, an Associate Professor and hand surgeon, examined plaintiff's finger and
5  diagnosed 1) a malunion of the healed fracture, 2) limited range of motion, and 3) pain associated
6  with motion and inability to grip.  In August 2004, Dr. Allen performed corrective surgery.
7        Dr. Penner is not certified as an orthopedic surgeon and is not qualified to perform
8  orthopedic surgery of comminuted fractures of phalanges, which involve the PIP joint.  When Dr.
9  Penner examined plaintiff, he properly diagnosed plaintiff's comminuted fracture and timely
10 referred plaintiff for an orthopedic consult.  Dr. Penner does not schedule orthopedic consults
11 and has no control over the method of scheduling or the dates of examination by the orthopedist.
12 The delay in plaintiff's referral to an orthopedist was not the result of any action or inaction on
13 the part of Dr. Penner.  Orthopedic consults are scheduled by the utilization management nurse.
14 Based on his order of an "urgent" orthopedic consult, Dr. Penner believed that plaintiff would be
15 seen by an orthopedist within one to two weeks.  By the time Dr. Penner saw plaintiff again on
16 February 17, 2004, plaintiff's fracture had healed.

17 II.  Defendant's Arguments

18       Based on this evidence, defendant Penner argues that the court should grant his
19 motion for summary judgment because he was not deliberately indifferent to plaintiff's medical
20 needs.  (Def.'s Mot. for Summ. J. at 5; Def.'s Reply at 3.)  Defendant acknowledges that a
21 violation of the Eighth Amendment may occur when prison officials are deliberately indifferent
22 to a prisoner's medical needs.  (Def.'s Mot. for Summ. J. at 5.)  However, defendant Penner
23 contends that plaintiff bears a substantial burden to prove deliberate indifference, noting that a
24 prison official only acts with deliberate indifference if he knows of and disregards an excessive
25 risk for a prisoner's health and safety.  The prison official must not only "be aware of facts from
26 /////

which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

If a prison official should be aware of the risk but is not, that official has not violated the Eighth Amendment. Defendant contends that this subjective approach focuses only on what a defendant's mental state actually was. Moreover, mere negligence in a prison official's diagnosis or treatment of a medical condition, without more, does not violate the Eighth Amendment. (Id.) In addition, delay in medical treatment can amount to deliberate indifference only if: 1) the delay seriously affected the medical condition for which plaintiff was seeking treatment, and 2) defendants were aware the delay would cause serious harm.

Here, defendant argues that he did not deny or delay plaintiff's medical care. (Def.'s Mot. for Summ. J. at 6.) Upon examination of plaintiff's finger, Dr. Penner noted swelling and properly prescribed Motrin for pain and ordered x-rays to diagnose the injury. (Id.) Based on the diagnosis, Dr. Penner determined that plaintiff would likely require surgery. (Id.) As a general practitioner, Dr. Penner was not qualified to perform the necessary surgery and ordered an "urgent" orthopedic consult ("1-2 weeks"). (Id.) However, Dr. Penner contends that he had no control over when an orthopedist would or could see plaintiff for treatment in that he does not schedule orthopedic treatments or consults. (Id.) Defendant notes that there is no respondeat superior liability under section 1983, so he cannot be responsible for delays caused by other persons employed by the California Department of Corrections and Rehabilitation. (Def.'s Reply at 2, 4.) In diagnosing plaintiff's injury, ordering an orthopedic consult, and providing appropriate pain medication, Dr. Penner contends that he did all that he reasonably could do to treat plaintiff's initial injury. (Def.'s Mot. for Summ. J. at 6.)

Dr. Penner notes that after his initial exam, he did not see plaintiff again until eleven weeks later by which time plaintiff had already suffered a malunion of his fracture. (Def.'s Mot. for Summ. J. at 6.) He then ordered another orthopedic consult, and Dr. Robert Allen of U.C. Davis Medical Center saw plaintiff on May 13, 2004 and performed corrective

surgery on August 23, 2004. (Id.) Defendant Penner reiterates that the surgery required the expertise of a qualified orthopedic surgeon. (Id.)

Defendant Penner argues that he did not and could not have the requisite state of mind required for a finding of deliberate indifference to plaintiff's medical needs. (Def.'s Mot. for Summ. J. at 7; Def.'s Reply at 4.) Dr. Penner initially diagnosed plaintiff's fracture and provided customary and appropriate treatment from the perspective of a general practitioner, including ordering an orthopedic consult, which eventually culminated in corrective surgery. (Def.'s Mot. for Summ. J. at 7.) Defendant acknowledges that plaintiff did not receive treatment from a qualified orthopedic specialist until several months after his initial injury, but defendant contends that he did not cause the delay in treatment.

Defendant Penner contends that the undisputed facts demonstrate that he provided plaintiff with appropriate diagnosis and treatment. (Def.'s Mot. for Summ. J. at 7.) In this regard, Dr. Penner argues that at all times he treated plaintiff with dignity and respect, provided plaintiff with patient-appropriate doses of pain medication and timely referred him for orthopedic treatment. Dr. Penner argues that he did not delay plaintiff's medical treatment and could not have reasonably altered the course of treatment for plaintiff' fractured finger. In this respect, defendant Penner contends that his actions were consistent with the degree of knowledge and skill ordinarily possessed and exercised by a general medical practitioner in similar circumstances. In addition, defendant argues that plaintiff has failed to provide any evidence in support his claim that Dr. Penner was deliberately indifferent to plaintiff's serious medical needs by denying or delaying treatment with respect to the comminuted fracture. (Def.'s Reply at 2.) Accordingly, defendant Penner concludes that he cannot be liable for providing constitutionally inadequate medical care to plaintiff and is entitled to summary judgment in his favor.

III. Plaintiff's Statement of Undisputed Facts and Evidence

Plaintiff has reproduced defendant's statement of undisputed facts and admitted those facts he does not dispute and denied the others. Plaintiff's opposition to the motion for

10

summary judgment is supported by his own declaration signed under penalty of perjury,[1] defendant Penner's response to plaintiff's interrogatories, and defendant Penner's response to plaintiff's request for production of documents and the medical records attached thereto.

Plaintiff presents the following version of undisputed facts based upon his evidence. On December 1, 2003, plaintiff injured his finger while playing football. Immediately thereafter, he went to the prison's medical clinic, and defendant Penner examined his finger. Defendant Penner said, "oh that's nothing! It's probably just sprained. Go back to your cell! If it's still swollen tomorrow, come back to see me." The next day, plaintiff's finger was approximately three times its normal size due to swelling, so plaintiff complained to correctional staff and convinced them to let him see a doctor. Plaintiff bypassed the normal waiting process and saw defendant Penner.

That same day, defendant Penner scheduled x-rays of plaintiff's finger. The physician who took the x-rays informed plaintiff that he had a severe fracture to the proximal interphalangeal joint. Dr. Penner reviewed the x-rays and told plaintiff that he would be seen by an orthopedic hand surgeon within the next five days. Dr. Penner also prescribed Vicodin for plaintiff.

On December 8, 2003, plaintiff complained to Dr. Penner that he had not seen a surgeon yet and asked him to check on the status of the appointment. Plaintiff told Dr. Penner that he knew of other inmates who had not gone out for surgery until it was too late. Plaintiff also asked for a re-fill of his pain medication. Dr. Penner responded by saying, "it looks better now, don't worry about it, you'll be going out soon." Defendant Penner then re-filled plaintiff's pain medication for three additional days.

On December 10, 2003, plaintiff spoke with a medical technical assistant ("M.T.A.") and asked her to let Dr. Penner know that plaintiff still had not gone out for surgery

---

[1] Defendant has filed objections to portions of plaintiff's declaration on grounds of hearsay, lack of personal knowledge, and improper lay opinion.

11

and needed a re-fill on his pain medication. The M.T.A. told plaintiff that Dr. Penner refused to re-fill his Vicodin prescription but would give him a weaker prescription for his pain. The M.T.A. also told plaintiff that Dr. Penner said plaintiff would need to fill out a medical request slip to see him and that he would no longer see him on an emergency basis.

On December 15, 2003, Dr. Penner reviewed plaintiff's medical file and placed him on Lansoprazule. Dr. Penner periodically reviewed plaintiff's medical file thereafter, but did not submit any further request that plaintiff see an orthopedist.

After filing several medical care request slips, on December 26, 2003, plaintiff saw Dr. Duc, another licensed physician at the prison medical clinic. Plaintiff told Dr. Duc that he was in severe pain. He also told Dr. Duc that Dr. Penner said he would be going out for surgery, but this had not taken place. Dr. Duc responded, "you should have been seen [by] the orthopedic surgeon for your finger." Dr. Duc noticed that Dr. Penner failed to make a follow-up consult and said, "I will make sure you get your finger fixed. It's not too late." The utilization management nurse on duty that day, S. Edmond, R.N., handled Dr. Duc's medical request for an orthopedic surgeon consult. As a result of Dr. Duc's request, on January 5, 2004, plaintiff was transported to Manteca Hospital. However, upon arrival, plaintiff was informed that prison medical staff failed to forward his x-rays and, in any event, the hospital did not have an orthopedic hand surgeon on staff. Plaintiff was then returned to the prison without receiving further medical care.

After submitting additional medical request slips, on February 17, 2004, plaintiff met with Dr. Penner and informed him of everything that had taken place since he last saw him. Dr. Penner told him not to worry and ordered new x-rays. Plaintiff asked him, "since it took so long to go out to the hospital for the first time, why don't you call to set me up for the surgeon at the same time you're ordering x-rays for me?" Dr. Penner said, "don't worry about that right now, I have to see what the injury looks like. I will order a follow-up visit to see you again."

/////

Plaintiff told Dr. Penner that he had submitted numerous medical requests for medical attention, that he has been in a great deal of pain, but still had not seen a surgeon.

On March 5, 2004, plaintiff was seen by Dr. Duc, who said, "I see you still haven't gotten your surgery, I told them that any delay would compromise the function of your finger. That's not good. It might be too late to get the use of your finger back now." Dr. Duc submitted an "urgent" consult request to the same utilization management nurse who had handled his previous request that plaintiff be seen by an orthopedic surgeon.

More than two months later, on May 13, 2004, plaintiff was taken to U.C. Davis Medical Center. There, he saw Dr. Robert Allen, who sent him back to the prison because he had not yet received approval for plaintiff's surgery from the prison's Health Care Review Committee. On July 9, 2004, Dr. Penner submitted another request for a consult with an orthopedic hand surgeon and initiated the approval process by submitting a request to the prison's Health Care Review Committee. Dr. Penner marked this request "Routine," as opposed to "Urgent."

On August 23, 2004, plaintiff finally underwent surgery for his finger at U.C. Davis Medical Center, almost nine months after the fracture. The surgeon told plaintiff that he should be re-scheduled for a follow-up visit in four months. However, plaintiff had to submit additional medical care request slips to see an orthopedic hand surgeon for post-surgery follow-up after the four month period expired without him being taken to be seen. Plaintiff declares he has been in pain ever since Dr. Penner cancelled his prescription for Vicodin and that his finger still occasionally swells. Plaintiff further declares that as a result of the treatment he received for his fractured finger, he cannot use his hand in the way he was able to before suffering the injury.

IV. Plaintiff's Arguments

Based on this evidence, plaintiff argues that the court should deny defendant's motion for summary judgment. Plaintiff contends that he had a serious medical need that was well documented as of December 2, 2003. Plaintiff argues that Dr. Penner had knowledge of the

1  serious risk of harm to plaintiff's health and yet disregarded that risk.  Specifically, plaintiff
2  contends that Dr. Penner had such knowledge of the risk based on Dr. Duc's characterization of
3  plaintiff's injury as "urgent."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 11.)
4     In addition, plaintiff contends that Dr. Penner reviewed his file on numerous
5  occasions to prescribe more medication, so he had to have seen that plaintiff had not been sent
6  out for consultation with an orthopedic surgeon.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 11.)
7  Nonetheless, Dr. Penner refused to call the consultation department or utilization management
8  nurse (who apparently is charged with the responsibility of scheduling consultations with
9  specialists) to determine why plaintiff had not been scheduled for surgery.  Plaintiff contends
10 that, at the very least, Dr. Penner should have resubmitted an "urgent" request for consultation
11 and surgery.  (Id. at 3.)  As a result of the excessive delay in his treatment, plaintiff argues that he
12 suffered permanent damage (deformity and loss of function) to his finger.  Accordingly, plaintiff
13 requests that the court deny defendant's motion for summary judgment.  (Id. at 11.)

## ANALYSIS

15    In many respects, plaintiff agrees with defendant Penner's statement of undisputed
16 facts.  For example, the parties do not dispute that Dr. Penner examined, diagnosed, treated, and
17 referred plaintiff for consultation with an orthopedic specialist within 48 hours of plaintiff's
18 injury.  Specifically, Dr. Penner ordered an "Orthopedics consult – (urgent) within 1-2 weeks re
19 fx [fracture] L 4th middle phalanx."  In addition, the parties do not dispute that Dr. Penner does
20 not schedule orthopedic consults.  Both parties have acknowledged that the utilization
21 management nurses are in charge of scheduling speciality consultations.
22    However, not all of the evidence submitted by Dr. Penner in support of his motion
23 for summary judgment is uncontroverted.  Plaintiff has submitted a declaration signed under
24 penalty of perjury describing a very different set of events that occurred after the first 48 hours
25 following plaintiff's injury.  Viewing the submitted evidence in a light most favorable to
26 plaintiff, there are genuine issues of material fact in dispute regarding whether defendant Penner

was deliberately indifferent to plaintiff's serious medical needs. In this regard, the instant case is strikingly similar to another action pending before the court in which Dr. Penner is a defendant and a review of that case is instructive in resolving the pending motion for summary judgment. See Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006).[2]

        In Jett, a state prisoner fractured his thumb on October 27, 2001, and was taken to Mercy Hospital's emergency room. Id. at 1094. An emergency room doctor placed Jett's thumb in a temporary splint and advised him to see an orthopedic doctor early that week. Id. Three days later, Jett saw a Dr. Hooper at the prison and he continued Jett's pain medication. Id. Nearly two months passed, and Jett did not see a physician even though he was in pain and repeatedly relayed his need to be seen by an orthopedist to prison medical staff. Id. On December 24, 2001, plaintiff saw Dr. Penner, who requested new x-rays at that time. Id. Dr. Penner reviewed the x-rays and noted "healing fracture." Id. Subsequently, Jett submitted additional medical care request slips to see an orthopedist. Id. On January 2, 2002, Dr. Penner removed Jett's splint and noted that he reviewed the x-rays, which showed no fracture misalignment. Id. On January 18, 2002, Dr. Penner saw Jett again and ordered another set of x-rays to rule out a nonunion of fractures and prescribed additional pain medication. Id. On February 1, 2002, Dr. Penner filled out a "routine" orthopedic consult request, but he did not submit it until six weeks later on March 13, 2002. Id. The x-rays Dr. Penner ordered on January 18, 2002, revealed "an old fracture deformity." Id. at 1095. Dr. Penner saw Jett again on February 25, 2005, and noted that his thumb was tender and had limited opposition. Id. at 1095. Subsequently, on April 9, 2002, a different physician submitted an "urgent" request for Jett to see an orthopedic hand surgeon. Id. On April 19, 2002, an orthopedic specialist examined Jett's finger and determined he should be referred to a hand specialist because his fracture had healed

/////

---

[2] That case was remanded to this court for further proceedings and remains pending. See Jett v. Penner, No. CIV S-02-2036 GEB JFM P.

improperly. Id. Dr. Penner saw Jett on two subsequent visits and on each occasion noted that a hand specialist consultation was pending. Id.

Against this background, the Ninth Circuit held that when viewed in a light most favorable to Jett, the evidence demonstrated triable issues of fact as to whether Dr. Penner was deliberately indifferent to Jett's serious medical needs. Id. at 1096-97. The court noted that, during Jett's initial visit with Dr. Penner, Dr. Penner assured him "don't worry about it, we got it all tooken [sic] care of, we know that you have to go back out [to Mercy Hospital emergency for a follow-up."] Yet, Jett was never taken to Mercy Hospital again and did not see an orthopedist until six months after his injury. Id. at 1097. The court also noted that Jett submitted other evidence indicating deliberate indifference, including his repeated submission of medical treatment request slips and Dr. Penner's submission of a mere "routine" request for an orthopedic consult approximately two-and-a-half months after his initial visit with Jett. Id. at 1097-98. Finally, the court found that the record was replete with evidence showing that the delay in providing medical care caused Jett harm. Id. at 1098. In this regard, on December 24, 2001, Dr. Penner's noted that Jett's fracture was still "healing" while in March of 2002, Dr. Penner's noted that the thumb had "healed." Id. Therefore, the court concluded that the evidence was sufficient to have a finder of fact determine when Dr. Penner knew of Jett's fractured thumb and his need to have it set and placed in a cast and whether the care provided by Dr. Penner constituted deliberate indifference to Jett's serious medical need. Id.

Similarly, in this case the court finds that plaintiff has submitted sufficient evidence to demonstrate that there are triable issues of fact as to whether Dr. Penner was deliberately indifferent to plaintiff's serious medical needs. In particular, according to plaintiff, on December 8, 2003, December 10, 2003, and December 15, 2003, Dr. Penner reviewed plaintiff's medical records in light of plaintiff's ongoing complaints but failed to take steps to ensure that plaintiff was timely seen by an outside orthopedic hand specialist. On at least two of those occasions, the evidence indicates that Dr. Penner recognized the seriousness of plaintiff's

1  injury because he continued to prescribe pain medication. Moreover, Dr. Penner had previously
2  ordered an "urgent" orthopedic consult for plaintiff. Notwithstanding plaintiff's ongoing
3  complaints and continued submission of medical treatment request slips, plaintiff was not seen
4  by an orthopedic hand specialist until approximately five months later, on May 13, 2004.
5  Finally, as in Jett, the record before the court includes sufficient evidence demonstrating that
6  plaintiff suffered harm as a result of the delay. Dr. Penner saw plaintiff immediately after he
7  fractured his finger on December 1, 2003, and continued to see him thereafter but no orthopedic
8  consult took place until May of 2004. By that time, plaintiff's fracture had healed, and he
9  suffered a malunion.

10  The court acknowledges Dr. Penner's argument that he was not responsible for the
11  delay in plaintiff's orthopedist consult and surgery. See McGuckin, 974 F.2d at 1062 (affirming
12  grant of summary judgment in favor of two physicians because nothing in the record
13  demonstrated that either was responsible for scheduling diagnostic examinations nor hindered the
14  performance of such an examination in plaintiff's case). However, accepting plaintiff's evidence
15  as true as the court must, there is evidence before the court from which a rationale trier of fact
16  could conclude that after defendant Penner was deliberately indifferent to plaintiff's serious
17  medical needs. In this regard, the trier of fact could base such a finding on evidence that after Dr.
18  Penner ordered the initial orthopedic consult, he knew of and ignored the fact that plaintiff was
19  not seen by an orthopedist for months, pushing him outside of the short time-frame during which
20  surgery could effectively treat his fractured finger.

21  On summary judgment the court may not weigh the parties' evidence or determine
22  the truth of the matters asserted by the parties. Rather, the court is required only to determine
23  whether there is a genuine issue of material fact appropriately resolved by trial. See Summers v.
24  A. Teichert & Son. Inc., 127 F.3d at 1152. Here, the court finds that there are material questions
25  of fact in dispute regarding whether the care provided by defendant Penner constituted deliberate
26  /////

indifference to plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment rights.  Accordingly, defendant Penner's motion for summary judgment should be denied.

### OTHER MATTERS

Plaintiff has requested an extension of time for discovery.  Pursuant to this court's April 30, 2007 scheduling order, the parties were ordered to conclude discovery by August 24, 2007.  Plaintiff has not made a showing establishing good cause to reopen discovery.  See Fed. R. Civ. P. 16(b); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  Accordingly, plaintiff's request will be denied.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's August 31, 2007 request to extend discovery is denied.

IT IS HEREBY RECOMMENDED that defendant's May 29, 2007 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 28, 2007.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
brow1086.57